UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

FILED

07 FEB 15  PM 4: 36

CLERK
WE. DISTRICT OF MICH

BY._____

UNITED STATES OF AMERICA,

Plaintiff,

No.   **1 : 07 CR 00 36**

vs.

Hon.

RICHARD M. ROSENBAUM,
EDWARD SCOTT CUNNINGHAM,
CHRISTINA A. FLOCKEN,

**Gordon J. Quist
U.S. District Judge**

Defendants.

**INDICTMENT**

_____/

The Grand Jury charges:

## INTRODUCTION

At all times pertinent hereto, the following relevant facts were true:

1.      On June 19, 1997, Richard M. Rosenbaum and Edward Scott Cunningham (Scott Cunningham), then residents of the State of Florida, caused articles of incorporation to be filed in the Office of the Nevada Secretary of State for a corporation named "Rosenbaum-Cunningham International, Inc." (RCI).  The incorporation documents of this business established that its board of directors consisted solely of Rosenbaum and Cunningham; specified an address in Palm Beach, Florida as the principal business office; and named Rosenbaum as "President" and Cunningham as "Secretary/Treasurer."  The documents also authorized the issuance of 25,000 shares of stock valued at $1.00 apiece and recorded the sale of 500 such shares to both Rosenbaum and Cunningham.  Rosenbaum and Cunningham then completed and caused to be filed a Nevada Business Registration form that described the nature of their business as a "janitorial contracting service"; they also completed and caused to be filed an application for RCI

to transact business in the State of Florida.

2.     On November 3, 1997, Rosenbaum, Cunningham, and Christina A. Flocken opened a bank account with Nations Bank under the corporate name "RCI Inc." and titled "RCI Inc. Payroll Account." Rosenbaum signed the account signature card as "President," Cunningham signed as "Vice President," and Flocken signed as "Controller."

3.     Prior to incorporating under the name "Rosenbaum-Cunningham International" in Nevada, Rosenbaum had, since at least 1993, operated a janitorial cleaning service that catered to the theme restaurant industry under the name "Rose Cleaning." Cunningham joined the enterprise during that period, and Flocken acted as the bookkeeper and accountant.

4.     Operating RCI from June 1997 to January 2007, Rosenbaum, Cunningham, and Flocken expanded their client list to include major national restaurant chains such as "House of Blues," "Planet Hollywood," "Dave and Busters," "Hard Rock Café," "ESPN Zone," "China Grill," and "Yardhouse." In October 1999, Rosenbaum also contracted with the Grand Traverse Resort (the Resort), located in Acme, Michigan, to provide laborers for grounds and maintenance services, kitchen cleaning, and housekeeping duties.

5.     The contract between the Grand Traverse Resort and Rosenbaum, doing business as RCI Inc., was renewed without change on a monthly basis until 2005, when another contract with minor modifications was negotiated. That contract was renewed in January 2006 and remained in force until it was terminated by the Resort on March 2, 2006. Like almost all of the contracts between RCI and its largest client businesses throughout the United States, the contract with the Resort specified that RCI was an independent contractor; that the laborers were RCI employees, hired and trained by RCI and subject to being fired at RCI's discretion; that RCI was responsible for paying the employees and for collecting, reporting, and paying Federal

2

employment taxes; and that RCI was responsible for complying with the requirements of the Immigration and Nationality Act relative to its employees.  In return for services performed by RCI employees, the Resort paid significant sums of money directly to RCI on a weekly basis. From 2002 to 2006 alone, the Resort paid RCI approximately $3,026,001.00 for RCI's services.

6.      Between June1997 and February 15, 2007, Rosenbaum, Cunningham, and Flocken developed, maintained, and managed a workforce of hundreds of employees working at hospitality-sector venues throughout the United States, including the Resort.  Most of these employees were Mexican, Honduran, and Guatemalan nationals, and most of them were in the United States unlawfully.  RCI laborers at each venue were supervised by an on-site manager; those managers typically spoke both English and Spanish, and most of them were illegal aliens themselves.  At the height of RCI's operation, there were approximately 115 such on-site managers; they were responsible for ensuring that services for which the venues had contracted were performed properly, and they also paid the RCI crews in cash on a weekly basis.  The managers obtained this cash by withdrawing funds that Flocken wire-transferred to bank accounts that they had opened, in their names, expressly for that purpose when they were appointed as managers.

7.      As equal owners of RCI, Rosenbaum and Cunningham managed these crews through seven or more RCI supervisors who routinely traveled around the United States to resolve problems at RCI venues and, at times, to mediate with management at these venues. Some of these supervisors also managed the RCI work crews at the largest venues.  Unlike most of the on-site managers, however, these supervisors were United States citizens.  With few, if any, exceptions, the supervisors selected the on-site managers on criteria that included language ability and whether the person possessed a driver's license that would enable him or her to open a

bank account through which RCI payroll could be funneled. As the controller, Flocken managed RCI's finances. She billed the venues for services performed by RCI employees; received payments for those services; wire-transferred funds to bank accounts of RCI's on-site managers and supervisors for payment of RCI employees' wages; and reimbursed those managers and supervisors for non-payroll business expenses.

8. The practice of paying RCI laborers in cash was dictated by Rosenbaum and Cunningham. RCI employees were not provided with Form W-2 Wage and Tax Statements because neither Rosenbaum, Cunningham, nor Flocken prepared such statements or caused them to be prepared. Also, neither Rosenbaum, Cunningham, nor Flocken ever collected, accounted for, or paid over Federal income tax withholding, Social Security and Medicare taxes (FICA), or Federal unemployment taxes – referred to collectively as "Employment Taxes" in the Internal Revenue Code – to the Internal Revenue Service for the wages earned by any of these employees.

9. Between tax years 2001 and 2005, RCI received gross receipts from its clients, including the Resort, of approximately $54,327,845.00. As a direct result of RCI's deliberate failure to collect, account for, and pay over the noted taxes to the Internal Revenue Service, the United States Government was deprived of approximately $18,640,345.00 in employment taxes. As a direct result of RCI's deliberate failure to collect, account for, and pay over the noted taxes to the Internal Revenue Service, RCI was unlawfully enriched by $18,640,345.00. The Defendants expended approximately 63 percent of these funds to pay RCI's operating expenses, and divided the remaining excess funds of approximately 37 percent among themselves.

10. In order to further disguise the true nature of their activities and to obstruct the Internal Revenue Service from performing its Government functions, Rosenbaum, Cunningham, and Flocken created several shell companies – "Ricurt Inc.," "Sunchaser Service Corporation,"

and "Monker LLC" – and opened bank accounts in the names of these entities to hold the excess funds. Rosenbaum and Cunningham each maintained a Sunchaser account into which proceeds from RCI were transferred, and then drew on these accounts to pay personal expenses. Rosenbaum and Flocken also used the Monker LLC and Ricurt accounts as vessels to hold illegal proceeds until they were later invested or spent. Neither Rosenbaum, Cunningham, nor Flocken ever paid any personal or corporate tax on the excess wages diverted into the Ricurt, Sunchaser, or Monker accounts. Instead, they used these funds to buy luxury boats and vehicles; to purchase lavish homes in Florida and California; to acquire race horses and to pay for their maintenance; to pay college tuition for their respective children; to fund excessive insurance policies; and generally to support extravagant spending and lifestyle costs. In a further effort to impede and obstruct the Internal Revenue Service, the Defendants also titled assets in the name of Sunchaser and Monker LLC in order to conceal the fact that Rosenbaum, Cunningham, and/or Flocken were the true owners of the assets.

11.    As stated, from June 1997 and continuing to February 15, 2007, the majority of the laborers who received wages from RCI in return for performing services under RCI contracts were aliens who had entered, or remained in, the United States in violation of law. These laborers were generally hired through word-of-mouth, as a result of references from current RCI employees, and through advertisements at job fairs, Hispanic festivals, and Spanish-language newspapers. With few, if any, exceptions, the laborers were never required by Rosenbaum, Cunningham, Flocken, nor any RCI employee acting at their direction to complete job applications; to complete Form W-4 Employee Withholding Allowance Certificates; to fill out Form I-9 Employment Eligibility Verification forms; or to produce any proof either that they were United States citizens or, if aliens, that they were legally present in the United States.

5

Neither Rosenbaum, Cunningham, nor Flocken maintained any form of personnel records on these laborers, nor did any of RCI's supervisors.  In many cases, however, Rosenbaum, Cunningham, and Flocken knew that particular employees or groups of employees were illegal aliens, and in all other cases they acted with reckless disregard that particular employees and groups of employees were illegal aliens.

12.    Commencing in 1999 and continuing until March 2006, when the Resort terminated its contract with RCI, Rosenbaum and Cunningham knew that almost all of the RCI employees at the Resort were illegal aliens because they had been informed of this fact by the three persons, known to the Grand Jury, who had acted consecutively as RCI supervisors at the Resort from October 1999 until March 2006.  Commencing in November 2003, if not earlier, Flocken also knew that RCI's workforce at the Resort consisted predominantly of illegal aliens. She knew this because, between November 11 and November 13, 2003, the supervisor of RCI's workforce at the Resort had obtained fraudulent Permanent Resident Cards ("Green Cards") for the majority of the workforce in order to satisfy the recent demand by Resort management that RCI demonstrate that its alien employees were lawfully present in the United States.  This RCI supervisor, a person known to the Grand Jury, obtained the cards at a cost of $3,460.43, and submitted an itemized reimbursement request to Flocken, along with a note stating that Rosenbaum had promised him an extra $1000.00 for completing this task.  On November 17, 2003, Flocken wire-transferred $4,460.43 from RCI's Nations Bank account in Florida to a bank account of the RCI supervisor to reimburse and reward him for obtaining the fraudulent Green Cards.

13.    The Grand Jury incorporates into Count 1, specifically and by reference and is if stated therein, the allegations and assertions stated in the Introduction.

## COUNT 1
(Conspiracy To Defraud the United States and To Harbor Illegal Aliens)

Beginning in or about October 1999 and continuing until the date of this Indictment, in the Southern Division of the Western District of Michigan, and elsewhere, the Defendants,

RICHARD M. ROSENBAUM,
EDWARD SCOTT CUNNINGHAM, and
CHRISTINA A. FLOCKEN,

did unlawfully, willfully, and knowingly conspire, confederate and agree with one another, and with others known and unknown to the Grand Jury: (1) to defraud the United States by impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, Federal income tax withholding, Social Security and Medicare taxes (FICA), and Federal unemployment taxes; and (2) for the purpose of commercial advantage and private financial gain, to conceal, harbor, and shield from detection more than 100 aliens, knowing and in reckless disregard of the fact that the aliens had come to, entered, or remained in the United States in violation of law.

### OBJECT AND MEANS OF THE CONSPIRACY

The object of the conspiracy was for the Defendants to defraud the United States by concealing from the Internal Revenue Service the existence of the employment relationship between RCI and its employees in order to evade their obligation to collect, account for, and pay over significant Federal income taxes, Social Security and Medicare taxes (FICA), and Federal unemployment taxes that were due and payable on the wages paid to RCI employees throughout the United States, and in order to evade their obligations to pay their personal income taxes by

concealing the source, amount, and disposition of funds that they diverted from RCI for their own use and enjoyment.  The Defendants intended to unlawfully enrich themselves in this way by establishing, maintaining, and managing an unskilled labor force of employees, knowing and in reckless disregard of the fact that most of those employees were aliens who had come to, entered, and resided in the United States in violation of law.  The Defendants adopted this as a means because the composition of RCI's workforce was essential to the success of their scheme. Illegal aliens were willing to be paid in cash, without the creation of payroll records; they could be hired on the spot, without the creation of any employment records, and could be fired at will without likely legal recourse; and they were highly unlikely to report the irregular nature of their employment to any authority.  The Defendants further intended to deliberately fail to collect, account for, or pay over Federal income tax withholding, Social Security and Medicare taxes (FICA), and Federal unemployment taxes to the Internal Revenue Service from the wages they paid to these employees as they were required by law to do; to expend a portion of these unlawfully retained funds on operating costs for RCI; and to retain the balance as profit for RCI, which they would then divide among themselves.

## OVERT ACTS

In furtherance of the conspiracy, and to effect its objects, at least one of the following overt acts was committed in the Western District of Michigan by a member of the conspiracy.

1.      Between November 11, 2003 and November 13, 2003, at the direction and with the knowledge of the Defendants, the RCI supervisor at the Resort, a person known to the Grand Jury, obtained 20 fraudulent Permanent Resident Cards ("Green Cards") in Grand Rapids, Michigan, for RCI employees at the Resort.  On November 17, 2003, Flocken paid the supervisor

8

$4,460.43 by bank wire-transfer to reimburse him for the cost of obtaining the cards and to reward him with an extra $1000.00 for performing that task.

2.      On or about May 20, 2004, Cunningham, with the approval of Rosenbaum and at his direction, purchased a residential property located at 7865 Shippy Road, Fife Lake, Michigan 49633 for $129,700.00, to be used as housing for RCI employees who worked at the Resort.

3.      On or about June 12, 2004, with the approval of Rosenbaum and Cunningham and at their direction, the RCI supervisor at the Resort, a person known to the Grand Jury, purchased a 1998 Ford Econoline E250 van for approximately $3,000.00, to be used for transporting RCI employees between the Shippy Road property and the Resort.

4.      On or about November 19, 2004, Rosenbaum and Cunningham met in Traverse City, Michigan with a representative of the U.S. Department of Labor (DOL), Wage and Hour Division, concerning the results of a recent DOL investigation which had concluded that RCI employees at the Resort had collectively been deprived of approximately $95,000.00 in overtime and holiday pay and that RCI had violated the Fair Labor Standards Act.  In that meeting, Rosenbaum and Cunningham admitted that RCI was responsible for the back-wages, and agreed to pay the employees.  Although Rosenbaum and Cunningham did thereafter issue pay checks for the approximately 100 affected current and former employees and cause roughly half of those checks to be mailed to the DOL investigator in Traverse City in late December 2004, the checks were drawn for amounts that reflected gross pay due less deductions for Federal employment taxes.  In correspondence that accompanied the checks mailed to DOL, the Defendants falsely claimed that the deductions from the amounts due reflected employment tax collection by RCI, when in fact Rosenbaum, Cunningham, and Flocken simply kept the deducted funds for

themselves.  The remaining half of the checks for former employees were mailed to addresses in Mexico.

5.        Beginning in or about October 1999 and continuing on a weekly basis until in or about March 2006, in or near Traverse City, Michigan, three consecutive RCI supervisors, all persons known to the Grand Jury, paid wages in cash to RCI employees for services performed at the Grand Traverse Resort.  On the frequent occasions when the payroll exceeded the sum of $10,000.00, the supervisors, with few, if any, exceptions, withdrew the sum in consecutive increments of less than $10,000.00.  The supervisors structured transactions in this manner at the direction of Rosenbaum, Cunningham, and Flocken in order to prevent the financial institution from filing the reports and maintaining the records that are required by law and regulation for cash transactions in excess of $10,000.

6.        During about October 1999, February 2005, and January 2006, at the Resort in Acme, Michigan, Rosenbaum negotiated, and subsequently executed, contracts between the Resort and RCI that provided for RCI to perform services at the Resort.  These contracts stated explicitly that RCI was responsible for collecting, reporting, and paying over all applicable Federal employment taxes for its employees, and that RCI was also responsible for ensuring compliance with the Immigration and Nationality Act relative to its employees.  When he negotiated these contracts, Rosenbaum knew that neither he, Cunningham, Flocken, nor any other person acting on their behalf intended to collect, account for, or pay over any required employment taxes or to ensure compliance with the Immigration and Nationality Act.  In fact, he knew that the exact opposite was true.

7.        On or about April 14, 2005, in Grand Traverse County, Michigan, and consistent

10

with a ruse developed by Defendants to prevent the Internal Revenue Service from discovering RCI's status as the direct employer of the RCI workers at the Resort, the RCI supervisor at the Resort, a person known to the Grand Jury, submitted a corporate Federal income tax return which stated that, during tax year 2004, he had operated as an independent company called "Shockeye, Inc.," had received gross income of $765,362, and had paid $659,316 in contract labor expenses. The supervisor knew that this was false because "Shockeye, Inc." was only a conduit through which RCI paid its employees, and that the claimed contract labor expenses of $659,316 in fact represented salary paid, through him, by RCI to its employees.

8. The Grand Jury incorporates by reference the allegations contained in Counts 3 through 22 of this Indictment as though fully set forth herein.

18 U.S.C. § 371
8 U.S.C. § 1324(a)(1)(A)(iii)

## COUNT 2
(Harboring Illegal Aliens)

Between about February 2002 and about March 2006, in Grand Traverse County in the

Southern Division of the Western District of Michigan, the Defendants,

RICHARD M. ROSENBAUM,
EDWARD SCOTT CUNNINGHAM, and
CHRISTINA A. FLOCKEN,

aided and abetted by one another and by persons known and unknown to the Grand Jury, and for

the purpose of commercial advantage and private financial gain, did conceal, harbor, and shield

from detection more than 100 aliens, knowing or in reckless disregard of the fact that the aliens

had come to, entered, or remained in the United States in violation of law.

8 U.S.C. § 1324(a)(1)(A)(iii)
8 U.S.C. § 1324(a)(1)(A)(v)(II)
8 U.S.C. § 1324(a)(1)(B)(i)

## COUNTS 3-22
(Willful Failure To Collect, Account for, and Pay Employment Taxes)

On or about the dates set forth below, in Grand Traverse County in the Southern Division

of the Western District of Michigan, and elsewhere, the Defendants,

RICHARD M. ROSENBAUM,
EDWARD SCOTT CUNNINGHAM, and
CHRISTINA A. FLOCKEN,

who, as persons conducting a business under the name Rosenbaum-Cunningham International,

Inc., with its principal place of business in West Palm Beach, Florida, were required under Title

26, United States Code, to collect, account for, and pay over taxes imposed by Title 26, United

States Code, including but not limited to Federal income tax withholding and Federal Insurance

Contributions Act (FICA) taxes from the total taxable wages of employees of Rosenbaum-

Cunningham International, Inc., did willfully fail to collect, truthfully account for, and pay over

to the Internal Revenue Service, and cause not to be collected, truthfully accounted for, and paid

over to the Internal Revenue Service, the Federal income tax withholding and FICA taxes that

were due and owing to the United States of America in the sums set forth below for the tax

periods (quarters) set forth below for the wages set forth below:

| Count | Date | Tax period (Quarter) ending | Approximate wages | Approximate taxes |
|-------|------|------------------------------|-------------------|-------------------|
| 3 | April 30, 2001 | March 31, 2001 | $57,287.00 | $24,805.00 |
| 4 | July 31, 2001 | June 30, 2001 | 58,188.00 | 25,195.00 |
| 5 | October 31, 2001 | September 30, 2001 | 16,266.00 | 6,962.00 |
| 6 | January 31, 2002 | December 31, 2001 | 66,048.00 | 28,269.00 |
| 7 | April 30, 2002 | March 31, 2002 | 76,415.00 | 32,324.00 |

13

| 8 | July 31, 2002 | June 30, 2002 | 103,324.00 | 43,706.00 |
|---|---|---|---|---|
| 9 | October 31, 2002 | September 30, 2002 | 117,638.00 | 49,761.00 |
| 10 | January 31, 2003 | December 31, 2002 | 94,335.00 | 39,904.00 |
| 11 | April 30, 2003 | March 31, 2003 | 132,721.00 | 53,487.00 |
| 12 | July 31, 2003 | June 30, 2003 | 120,974.00 | 48,753.00 |
| 13 | October 31, 2003 | September 30, 2003 | 148,002.00 | 59,645.00 |
| 14 | January 31, 2004 | December 31, 2003 | 139,874.00 | 56,369.00 |
| 15 | April 30, 2004 | March 31, 2004 | 159,821.00 | 64,408.00 |
| 16 | July 31, 2004 | June 30, 2004 | 214,786.00 | 86,559.00 |
| 17 | October 31, 2004 | September 30, 2004 | 238,177.00 | 95,985.00 |
| 18 | January 31, 2005 | December 31, 2004 | 197,135.00 | 79,445.00 |
| 19 | April 30, 2005 | March 31, 2005 | 208,218.00 | 83,911.00 |
| 20 | July 31, 2005 | June 30, 2005 | 265,295.00 | 106,914.00 |
| 21 | October 31, 2005 | September 30, 2005 | 211,220.00 | 85,122.00 |
| 22 | January 31, 2006 | December 31, 2005 | 55,371.00 | 22,314.00 |
| | | Totals: | $2,681,095.00 | $1,093,838.00 |

26 U.S.C. § 7202
18 U.S.C. § 2

## COUNT 23
(Forfeiture)

Upon conviction of one or more of the offenses alleged in Counts 1-2 of this Indictment, the Defendants,

RICHARD M. ROSENBAUM,
EDWARD SCOTT CUNNINGHAM, and
CHRISTINA A. FLOCKEN,

shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(6)(A)(ii), any property constituting, or derived from, or traceable to, proceeds obtained, directly or indirectly from the violations of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(1)(A)(iii), including but not limited to the following:

1.   MONEY JUDGMENT: A sum of money equal to $54,000,000 in United States currency representing the amount of proceeds obtained as a result of the violations of Counts 1-2, for which the Defendants are jointly and severally liable.

2.   BANK ACCOUNTS:

a.   Bank of America Account No. 005045166263, in the amount of $372,075.20, registered in the name of Sunchaser Service Corporation, with Richard Rosenbaum being the registered signatory;

b.   Bank of America Account No. 005491119932, in the amount of $25,103.37, registered in the name of Monker, LLC, with Richard Rosenbaum and Christine Flocken being the registered signatories;

c.   Bank of America Account No. 3430687980, in the amount of $13,380.41, registered in the name of Christina Flocken;

d.      Bank of America Account No. 3734458158, in the amount of

$132,859.94, registered in the name of Christina Flocken;

e.      Bank of America Account No. 003660771899, in the amount of

$233,150.87, registered in the name of RCI, with  Richard Rosenbaum and Scott

Cunningham being the registered signatories;

f.      Bank of America Account No. 003660771909, in the amount of

$191,053.94, registered in the name of RCI, with Richard Rosenbaum and Scott

Cunningham being the registered signatories;

g.      Wachovia Bank Account No. 1020001219141, in the amount of

$19,081.81, registered in the names of Edward Scott Cunningham and Maria

Cunningham;

h.      Wachovia Bank Account No. 2000027213221, in the amount of

$13,776.26 as of 2/13/07, registered in the name of RCI Services, Inc; and

i.      Wachovia Bank Account No. 2000027213234, in the amount of

$18,821.98 as of 2/13/07, registered in the name of RCI Services, Inc.

3.      REAL PROPERTY:

a.      All that lot or parcel of land, together with its buildings, appurtenances,

improvements, fixtures, attachments and easements located at 6106 Wildcat Run,

West Palm Beach, Florida, Palm Beach County, titled in the names of Edward

Scott Cunningham and his wife, Maria Christina Cunningham, more particularly

described as follows:

Lot 50 of Ibis Golf and Country Club Plat No. 7, according to the

Plat thereof, as recorded in Plat Book 67, at Page 152, of the Public Records of Palm Beach County, Florida.  Subject to any and all conditions, restriction, limitations and easements of record. Assessor's Parcel No. 74-41-42-24-06-000-0500.

b.    All that lot or parcel of land, together with its buildings, appurtenances,

improvements, fixtures, attachments and easements located at 325 Cindy Court,

Longwood, Florida, Seminole County, titled in the names of Richard M.

Rosenbaum and his wife, Marcy  H. Rosenbaum, particularly described as

follows:

Lot 14, Forest Park Estates, Section Two, according to the Plat thereof as recorded  in Plat Book 23, at Pages 64 and 65, Public Records of Seminole County, Florida.
Subject to any and all conditions, restriction, limitations and easements of record.
Assessor's Parcel No. 07-21-29-5FD-0000-0140.

c.    All that lot or parcel of land, together with its buildings, appurtenances,

improvements, fixtures, attachments and easements located at 429 Vista Oak

Drive, Longwood, Florida, Seminole County, titled in the name of Christina A.

Flocken, particularly described as follows:

Lot 13, Wingfield North II, according to the Plat thereof as recorded in Plat Book 38, Pages 44, 45, and 46, Public Records of Seminole County, Florida.
Subject to any and all conditions, restriction, limitations and easements of record.
Parcel No. 23-20-29-5JZ-0000-0130.

d.    All that lot or parcel of land, together with its buildings, appurtenances,

improvements, fixtures, attachments and easements located at 17531 Via Loma

Drive, Poway, California, San Diego County, titled in the names of Christina A.

17

Flocken and Monker LLC, particularly described as follows:

> Lot 75 of City of Poway Tract No. 81-01 Unit No. 1 in the City of Poway, County of San Diego, State of California, according to Map thereof No. 11037, filed in the Office of the County Recorder of San Diego County, September 14, 1984.

4.     SUBSTITUTE ASSETS - If any of the above-described forfeitable property, as a result of any act or omission of the Defendants,

A.     cannot be located upon the exercise of due diligence;

B.     has been transferred or sold to, or deposited with, a third party;

C.     has been placed beyond the jurisdiction of the court;

D.     has been substantially diminished in value; or

E.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of the Defendants up to the value of the forfeitable property described above, as being

subject to forfeiture.

18 U.S.C. § 982(a)(6)(A)(ii)
18 U.S.C. § 982(a)(6)(B)
18 U.S.C. § 982(b)(1)
18 U.S.C. § 371
8 U.S.C. § 1324(a)(1)(A)(iii)
8 U.S.C. § 1324(b)
21 U.S.C. § 853(p)
28 U.S.C. § 2461

A TRUE BILL

_____
GRAND JURY FOREPERSON

MARGARET M. CHIARA
United States Attorney

_____
HAGEN WALTER FRANK
Assistant United States Attorney

_____
MATTHEW G. BORGULA
Assistant United States Attorney

19